**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID J. VALENCIA, JR.,<br><br>　　　　Petitioner,<br><br>　　v.<br><br><br>DAVE DAVEY, Warden,<br><br>　　　　Respondent. | Case No. 1:11-cv-01066-AWI-SKO-HC<br><br>ORDER SUBSTITUTING WARDEN DAVE DAVEY AS RESPONDENT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY THE SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DOCS. 29, 47, 51)<br><br>FINDINGS AND RECOMMENDATIONS TO ENTER JUDGMENT FOR RESPONDENT AND TO DECINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>**OBJECTIONS DEADLINE:**<br>**THIRTY (30) DAYS** |

　　　Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304.  Pending before the Court is the second amended petition (SAP), which consists of the first amended petition (FAP) (doc. 29) and the claims stated in Petitioner's unopposed motion to amend the FAP (doc. 47).  (See doc. 51, order of this Court filed on November 17, 2012, deeming the two documents to constitute the SAP and permitting Respondent to file a

1

supplemental answer.)  Respondent filed an answer to the FAP on
October 18, 2012, but declined to supplement it after the SAP was
filed.  Petitioner filed a traverse on November 26, 2012.

I.  Jurisdiction and Order Substituting Respondent

Because the petition was filed after April 24, 1996, the
effective date of the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v.
Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002,
1004 (9th Cir. 1999).

Judgment was rendered by the Superior Court of the State of
California, County of Tuolumne (TCSC), located within the
jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a),
(d).  Petitioner claims that in the course of the proceedings
resulting in his conviction, he suffered violations of his
constitutional rights.  The Court concludes it has subject matter
jurisdiction over the action pursuant to 28 U.S.C. §§ 2254(a) and
2241(c)(3), which authorize a district court to entertain a petition
for a writ of habeas corpus by a person in custody pursuant to the
judgment of a state court only on the ground that the custody is in
violation of the Constitution, laws, or treaties of the United
States.  Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v.
Corcoran, 562 U.S. - , -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Michael Martel who
had custody of Petitioner at his institution of confinement.  (Doc.
45, 1.)  Petitioner thus named as Respondent a person who had
custody of Petitioner within the meaning of 28 U.S.C. § 2242 and
Rule 2(a) of the Rules Governing Section 2254 Cases in the District
Courts (Habeas Rules).  See Stanley v. California Supreme Court, 21

2

F.3d 359, 360 (9th Cir. 1994).

In view of the fact that the warden at the California State Prison at Corcoran, California, is now Dave Davey, it is ORDERED that Dave Davey, Warden of the California State Prison at Corcoran, California, be SUBSTITUTED as Respondent pursuant to Fed. R. Civ. P. 25.[1]

II.   Background

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004).  This presumption applies to a statement of facts drawn from a state appellate court's decision.  Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009).  The following statement of procedural history and facts is taken from the opinion of the Court of Appeal of the State of California, Fifth Appellate District (CCA) in People v. Valencia, case number F059244, filed on March 3, 2011.

A jury convicted appellant David John Valencia of felony

---

[1] Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a civil action in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party. It further provides that the Court may order substitution at any time, but the absence of such an order does not affect the substitution.
  The Court takes judicial notice of the identity of the warden from the official website of the California Department of Corrections and Rehabilitation (CDCR), http://www.cdcr.ca.gov.  The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including undisputed information posted on official websites.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010).

corporal injury to a spouse or cohabitant. He admitted
suffering five felony convictions, two of which
constituted strikes. The trial court sentenced Valencia to
25 years to life. Valencia appeals, contending (1) the
trial court had a sua sponte duty to instruct on the
defense of necessity; (2) defense counsel was ineffective
for failing to request a necessity instruction; and (3)
the trial court abused its discretion in denying his
request to strike one of his strike convictions. We will
affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

On the afternoon of September 13, 2009, people at or near
La Bella Rosa Vineyards and Old Wards Ferry Road heard
sounds of an argument emanating from a house trailer
across the street from the vineyard. Valencia and his
wife, Carrie Kobel, lived in the house trailer and people
could hear them yelling and screaming. People also heard
Kobel crying.

Kobel was then seen coming down her driveway, with
Valencia following. One witness saw Valencia push Kobel,
causing her to fall to the ground. Dennis Jackson, a
neighbor, saw Valencia trying to punch Kobel with his fist
five to 10 times; Valencia actually connected with a punch
four times. Kobel was screaming for help.

Linda Peterson and her daughter, Crystal Moberg, ran to
the middle of the street and called out, "What the heck is
going on up there?" Kobel asked them to call the police;
Valencia told them to mind their own business. Peterson
told Moberg to go call the police.

Valencia crossed over to where Peterson was and began
yelling and swearing at her. Jackson saw Peterson and
Valencia within a foot of each other and heard a "heated
exchange." Jackson overheard Valencia tell Peterson it was
none of her business and that he, Valencia, was trying to
keep Kobel from driving. Jackson told Valencia his
comments were "bullshit" based on what he, Jackson, had
seen. After Jackson's remark, Valencia became "very
aggressive and intimidating" toward Jackson.

At approximately 4:30 p.m., Sheriff's Deputy Daniel Newman
arrived at the scene; Sheriff's Deputy Samuel Egbert
already was there. Newman noted that Kobel was speaking

4

rapidly and appeared "shaken up," as if "something traumatic" had happened. Newman saw that Kobel had dried blood on her left temple and fresh blood from a laceration on the top of her head.

Kobel told Newman that she and Valencia had gotten into an argument when she went to move her truck in order to make room for friends coming over to park. Kobel's driver's license had been suspended due to a vehicle accident where she had been under the influence of alcohol. Valencia objected to her driving because the two of them had been drinking and he thought she was going to leave; Kobel told him she was not leaving, but was only moving the truck onto the driveway. When Kobel went to move the truck, Valencia hit her in the back of the head, maybe with his fists.

Egbert spoke to Valencia, who denied there had been a fight. Valencia said there was an argument, but no fight. Valencia said Kobel was intoxicated and was attempting to leave their property; he was only trying to stop her. Valencia denied hitting Kobel. Newman and Egbert saw injuries on Valencia's knuckles that were consistent with having punched someone.

Valencia was charged with one count of violating Penal Code section 273.5, subdivision (a),FN1 corporal injury to a spouse or cohabitant. It also was alleged that he had suffered five felony convictions within the meaning of section 1203, subdivision (e)(4), and two of the convictions constituted strikes within the meaning of section 667, subdivisions (b) through (i).

    FN1. All further statutory references are to the
    Penal Code unless otherwise noted.

The trial was bifurcated. At the trial on the underlying offense, Kobel testified that she recently had married Valencia before the altercation and that the two of them lived in the house trailer on Old Wards Ferry Road. Kobel admitted she and Valencia fought that day, but claimed she did not remember Valencia ever hitting her. Kobel claimed she did not remember telling Newman that Valencia hit her in the back of the head and did not remember telling hospital personnel that her husband struck her with his fists. Kobel remembered that she and Valencia had argued. She told Valencia specifically that she was only going to

move her truck; they argued over her moving the vehicle.

Newman testified to what Kobel had told him. Kobel also told him that she feared for her life as a result of Valencia's assault.

Kendall Ann Long testified she had been in a relationship with Valencia in 2000. One evening as they were walking down a street together, Valencia demanded that she go to her mother's house and pick up her son. When she responded "No," Valencia looked her in the eye and hit her full force with his fist between her temple and ear. She suffered a ruptured eardrum from the assault.

Ellen Klein, a nurse practitioner, treated Kobel for the laceration on her head. Klein described the laceration as superficial; it was closed with staples. Klein also testified Kobel told her Valencia had hit her in the head with his fist.

The jury found Valencia guilty as charged. Valencia admitted the prior convictions. The trial court denied Valencia's request to strike at least one of his strike convictions. Valencia was sentenced to a term of imprisonment of 25 years to life.

(People v. Valencia, no. F059244, 2011 WL 726670, at *1-*2 (March 3, 2011).

III.   Failure to Instruct on the Defense of Necessity

Petitioner alleges that his Sixth and Fourteenth Amendment rights to due process of law and to have the jury determine every element of his case beyond a reasonable doubt were violated when the trial court failed to instruct sua sponte on the defense of necessity.  Petitioner contends the trial court in effect directed a verdict for the prosecution because substantial evidence supported the defense, and Petitioner was relying on it.  (SAP, doc. 29, 4.)

///

///

6

A. <u>Standard of Decision and Scope of Review</u>

Title 28 U.S.C. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as distinct from the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision. <u>Cullen v. Pinholster</u>, - U.S. -, 131 S.Ct. 1388, 1399 (2011); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. <u>Williams v. Taylor</u>, 529 U.S. at 405-06. The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner. Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.  An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable.  Williams, 529 U.S. at 410.  A state court's determination that a claim lacks merit precludes federal habeas relief as long as fairminded jurists could disagree on the correctness of the state court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Where the state court decides an issue on the merits, but its decision is unaccompanied by an explanation, a habeas petitioner must show there was no reasonable basis for the state court to deny relief.  Harrington v. Richter, 131 S.Ct. 770, 784.  In such circumstances, this Court should perform an independent review of the record to ascertain whether the state court decision was

8

objectively unreasonable.  <u>Medley v. Runnels</u>, 506 F.3d 857, 863 n.3 (9th Cir. 2007), <u>cert. denied,</u> 552 U.S. 1316 (2008); <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).  Independent review is not the equivalent of <u>de</u> <u>novo</u> review; the Court must still defer to the state court's ultimate decision.  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).   In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits."  <u>Cullen v. Pinholster</u>, 131 S.Ct. at 1398.  Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1).  <u>Id.</u> at 1400.

With respect to each claim, the last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d).  <u>Barker v. Fleming</u>, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); <u>Bailey v. Rae</u>, 339 F.3d 1107, 1112-13 (9th Cir. 2003).  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof.  <u>Cullen v. Pinholster</u>, 131 S.Ct. at 1398.  Habeas relief is not appropriate unless each ground

9

supporting the state court decision is examined and found to be unreasonable under the AEDPA.  Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).  The deferential standard of § 2254(d) applies only to claims that have been resolved on the merits by the state court.  If a claim was not decided on the merits, this Court must review it de novo.  Lambert v. Blodgett, 393 F.3d 943, 965 (9th Cir. 2004); Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004).  The deferential standard of § 2254(d) sets a substantially higher threshold for relief than does the standard of de novo review, which requires relief for an incorrect or erroneous application of federal law.  Renico v. Lett, 559 U.S. 766, 773 (2010).

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1).  A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  For relief to be granted, a federal habeas court must find that the trial court's factual determination was such that a reasonable fact finder could not have made the finding; that reasonable minds might disagree with the determination or have a basis to question the

10

finding is not sufficient.  <u>Rice v. Collins</u>, 546 U.S. 333, 340-42

(2006).  To conclude that a state court finding is unsupported by

substantial evidence, a federal habeas court must be convinced that

an appellate panel, applying the normal standards of appellate

review, could not reasonably conclude that the finding is supported

by the record.  <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir.

2004).  To determine that a state court's fact finding process is

defective in some material way or non-existent, a federal habeas

court must be satisfied that any appellate court to whom the defect

is pointed out would be unreasonable in holding that the state

court's fact finding process was adequate.  <u>Id.</u> at 1000.

> B.  <u>The State Court's Decision</u>

On direct appeal, the CCA's decision on Petitioner's claim was

left undisturbed by the California Supreme Court (CSC).  (LD 7.)

The CCA's decision on the issue is as follows:

> I. Necessity Instruction
>
> Valencia's contention that a necessity instruction should
> have been given is twofold: (1) the trial court had a *sua
> sponte* duty to instruct on necessity, and (2) defense
> counsel was ineffective for failing to request a necessity
> instruction. Neither contention prevails because the
> evidence did not support a necessity instruction.
>
> A trial court has a *sua sponte* duty to instruct on a
> defense if it is supported by substantial evidence and if
> it is not inconsistent with the defendant's theory of the
> case. (*People v. Boyer* (2006) 38 Cal.4th 412, 468-469.) A
> trial court is not required to instruct on theories that
> lack substantial evidentiary support. (*People v. Miceli*
> (2002) 104 Cal.App.4th 256, 267.) The defendant has the
> burden of proving the defense of necessity by a

11

preponderance of the evidence. (*People v. Heath* (1989) 207 Cal.App.3d 892, 901 (i).)

In order to "justify an instruction on the defense of necessity, there must be evidence sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency. [Citations.]" (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1035 (*Pepper*).) "Necessity does not negate any element of the crime, but represents a public policy decision not to punish such an individual despite proof of the crime. [Citations.]" (*Heath, supra*, 207 Cal.App.3d at p. 901.)

The defense of necessity, in contrast to the defense of duress, has traditionally covered situations where physical forces beyond the defendant's control rendered illegal conduct the lesser of two evils. (*Heath, supra*, 207 Cal.App.3d at p. 899.) "The defense of necessity generally recognizes that ' "the harm or evil sought to be avoided by [the defendant's] conduct is greater than that sought to be prevented by the law defining the offense charged." ' [Citation.]" (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 100, brackets in original (*Coffman and Marlow*).)

The necessity defense is available to a defendant if the actions he or she intended to engage in, and did engage in, were unlawful. (*Coffman and Marlow, supra*, 34 Cal.4th at p. 100.) The situation presented to the defendant must be of an emergency nature, threatening physical harm, and lacking an alternative legal course of action. (*People v. Weber* (1984) 162 Cal.App.3d Supp. 1, 5.)

Here, a necessity instruction was not warranted for three reasons: (1) Valencia denied engaging in any illegal conduct, specifically, he denied hitting Kobel; (2) Valencia had adequate options available to avoid the perceived harm of allowing Kobel to drive drunk; and (3) the belief that Kobel was going to drive away while drunk was not reasonable.

Valencia maintained at trial that he did not hit Kobel; they merely argued. Valencia did not contend he was forced

to engage in an illegal act in order to prevent a greater wrong; an argument is not an illegal act. Valencia's claim, if believed by the jury, was insufficient as a matter of law to establish the elements of the defense of necessity; there was no illegal act. Therefore, the instruction was not warranted. (See *Pepper, supra,* 41 Cal.App.4th at p. 1036.)

More importantly, Valencia had numerous legal options available to him to prevent Kobel from driving while intoxicated, which precluded a defense of necessity. (*Pepper, supra*, 41 Cal.App.4th at p. 1035.) Valencia could have (1) taken the keys from Kobel, (2) offered to move the truck himself, (3) disabled the truck, or (4) called 911 if Kobel insisted on driving away. Any one of these simple legal actions would have prevented the perceived harm Valencia claimed he was trying to prevent-that of having Kobel drive while drunk.

Moreover, virtually the only evidence that Kobel was going to drive away in the truck while intoxicated came from the self-serving statements of Valencia. Kobel told Newman she was moving the truck only to make room for friends to park and that she had told Valencia she was not leaving the property. Kobel also testified at trial that she specifically told Valencia she was only moving the truck, not driving away. Valencia's claim of trying to avoid harm to the public was not reasonable under the circumstances.

People v. Valencia, 2011 WL 726670, at *2-*4.

C.   Analysis

The only basis for federal collateral relief for instructional error is that the infirm instruction or the lack of instruction by itself so infected the entire trial that the resulting conviction violates due process.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973); see Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (it must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some right guaranteed to the defendant by the Fourteenth Amendment).  The instruction may

not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. <u>Estelle</u>, 502 U.S. at 72.  The Court in <u>Estelle</u> emphasized that the Court had very narrowly defined the category of infractions that violate fundamental fairness, and that beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.  <u>Id.</u> at 72-73.

Under the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause and Confrontation Clause of the Sixth Amendment, criminal defendants must be afforded a meaningful opportunity to present a complete defense.  <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986); <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984).  The Supreme Court has not recognized a generalized constitutional right to have a jury instructed on a defense available under the evidence under state law.  <u>See</u> <u>Gilmore v. Taylor</u>, 108 U.S. 333, 343 (1993).  However, when habeas relief is sought under 28 U.S.C. § 2254, a failure to instruct on the defense theory of the case constitutes error if the theory is legally sound and evidence in the case makes it applicable.  <u>Clark v. Brown</u>, 450 F.3d 898, 904 (9th Cir. 2006); <u>see</u> <u>Mathews v. United States</u>, 485 U.S. 58, 63 (1988) (reversing a conviction and holding that even if a defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment, and the defendant requests such an instruction).

The Supreme Court has held that harmless error analysis applies to instructional errors as long as the error at issue does not categorically vitiate all the jury's findings.  <u>Hedgpeth v. Pulido</u>,

14

555 U.S. 57, 61 (2008) (citing Neder v. United States, 527 U.S. 1, 11 (1999) (quoting in turn Sullivan v. Louisiana, 508 U.S. 275 (1993) concerning erroneous reasonable doubt instructions as constituting structural error)).  In Hedgpeth v. Pulido, the Court cited its previous decisions that various forms of instructional error were trial errors subject to harmless error analysis, including errors of omitting or misstating an element of the offense or erroneously shifting the burden of proof as to an element. Hedgpeth, 555 U.S. 60-61.  To determine whether a petitioner proceeding pursuant to § 2254 suffered prejudice from such an instructional error, a federal court must determine whether the petitioner suffered actual prejudice by assessing whether, in light of the record as a whole, the error had a substantial and injurious effect or influence in determining the jury's verdict.  Hedgpeth, 555 U.S. at 62; Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).

A failure to instruct on a defense theory has been held harmless under the Brecht standard where other instructions permitted consideration of the pertinent defensive matter. Beardslee v. Woodford, 358 F.3d 560, 576 (9th Cir. 2004) (failure to instruct on manslaughter was not error, but if it was error, it was harmless error because it had no substantial or injurious effect or influence in determining the jury's verdict in light of the verdicts rendered and the giving of numerous instructions that permitted consideration of the matter in question).

Here, the evidence established that the victim had informed Petitioner she did not intend to drive away, but simply sought to adjust the location of a parked vehicle.  Credible witnesses also testified that Petitioner engaged in the aggressively violent

conduct of pursuing the victim down the driveway as she ran screaming from him, pushing her down to the ground, and inflicting repeated blows to her head, which were interrupted only by the approach of witnesses who attempted to de-escalate the situation. Petitioner's protestations at the time of his assaultive behavior provide the only contemporaneous evidence that his role was merely that of someone attempting to prohibit unlawful driving.  In light of the physical evidence of head wounds to the victim and testimony from multiple sources regarding the conduct of Petitioner and the victim, the state court properly concluded that the factual circumstances presented no emergency and did not foreclose many other alternative courses of conduct immediately available to Petitioner, including obtaining the keys, otherwise disabling the vehicle, or seeking the authorities to intervene.  The state court's findings regarding the evidence were objectively reasonable in light of the evidence before the state court.

This Court is bound by the state court's application of state law and its conclusion that the theory of necessity was not legally sound under the circumstances.  In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless the interpretation is deemed untenable or a veiled attempt to avoid review of federal questions.  Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).  Federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v. Corcoran, 131 S.Ct.

at 16; Estelle v. McGuire, 502 U.S. at 67-68.  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).

In sum, Petitioner has not shown he suffered a denial of due process of law from the failure to instruct on the defense of necessity.  It will be recommended that Petitioner's claim be denied.

IV.  Ineffective Assistance of Counsel for Failing to Request an Instruction on the Necessity Defense

Petitioner alleges that his trial counsel's failure to request an instruction on the necessity defense constituted ineffective assistance of counsel (IAC) in violation of his rights under the Sixth and Fourteenth Amendment.  (SAP, doc. 29, 4.)

A.  The State Court's Decision

The decision of the CCA on this issue, which was left undisturbed by the CSC's summary denial of review (LD 7), is as follows:

> For the same reasons the trial court was not required *sua sponte* to instruct on the defense of necessity, defense counsel was not ineffective for failing to request a necessity instruction. The evidence was insufficient to support such an instruction. As the appellate court stated in *People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091, "defense counsel is not required to make futile motions or to indulge in idle acts to appear competent."

People v. Valencia, 2011 WL 726670, at *4.

B.  Analysis

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a defendant must show that 1) counsel's representation fell below an objective standard of

17

reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  A petitioner must identify the acts or omissions of counsel alleged to have been deficient.  Strickland, 466 U.S. 690.  This standard is the same standard that is applied on direct appeal and in a motion for a new trial.  Strickland, 466 U.S. 697-98.

In determining whether counsel's conduct was deficient, a court should consider the overall performance of counsel from the perspective of counsel at the time of the representation. Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's conduct was adequate and within the exercise of reasonable professional judgment and the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 688-90.

In determining prejudice, a reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding.  Strickland, 466 U.S. at 694.  In the context of a trial, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.  Strickland, 466 U.S. at 695.  This Court must consider the totality of the evidence before the fact finder and determine whether the substandard representation rendered the proceeding fundamentally unfair or the results thereof unreliable.

18

Strickland, 466 U.S. at 687, 696.  A court need not address the deficiency and prejudice inquiries in any given order and need not address both components if the petitioner makes an insufficient showing on one.  Strickland, 466 U.S. at 697.

Here, the state court reasonably applied a standard consistent with the Strickland standard in concluding that counsel had not engaged in objectively unreasonable conduct in failing to request an instruction that was not applicable under the circumstances.  The failure to seek relief that is not merited or to make a motion that is otherwise futile does not constitute objectively unreasonable conduct.  James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994).  Where, as here, the evidence of the Petitioner's guilt is very strong, and the request for the instruction would have been denied, a petitioner cannot show that any prejudice resulted from counsel's failure to request the instruction.  Id.

Accordingly, it will be recommended that the Court deny Petitioner's claim of ineffective assistance based on failure to request a necessity instruction.

V.   Failure to Strike a Prior Conviction Resulting
     in an Unfair and Excessive Sentence

Petitioner alleges that the sentencing court's failure to strike at least one of his prior convictions was an abuse of discretion that resulted in a sentence that excessive, disproportionate, and fundamentally unfair in violation of his right to due process of law and his freedom from cruel and unusual punishment protected by the Eighth and Fourteenth Amendments.  (SAP, doc. 29, 5; SAP, doc. 47, 1-2.)

Petitioner alleges that the sentencing court abused its discretion under state law when it declined to strike at least one of his prior convictions.  This Court is bound by the CSC's interpretation and application of California law unless it is determined that the interpretation is untenable or a veiled attempt to avoid review of federal questions.  <u>Murtishaw v. Woodford</u>, 255 F.3d 926, 964 (9th Cir. 2001).  Here, there is no basis for a conclusion that the CSC's interpretation or application or state law was untenable or part of an attempt to avoid review of federal questions.  Thus, this Court will not review the state court's interpretation or application of Cal. Pen. Code § 1385 and related state decisional law.  A claim alleging misapplication of state sentencing law involves a question of state law which is not cognizable in a proceeding pursuant to 28 U.S.C. § 2254.  <u>See</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) (rejecting a claim that a state court misapplied state statutes concerning aggravating circumstances on the ground that federal habeas corpus relief does not lie for errors of state law); <u>Souch v. Schaivo</u>, 289 F.3d at 623 (dismissing as not cognizable claims alleging only that the trial court abused its discretion in selecting consecutive sentences and erred in failing to state reasons for choosing consecutive terms); <u>Miller v. Vasquez</u>, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (dismissing as not cognizable a claim concerning whether a prior conviction qualified as a sentence enhancement under state law).  A claim that a petitioner should be resentenced after a consideration of a motion to strike a prior conviction has been held not cognizable on federal habeas review.  <u>See</u> <u>Brown v. Mayle</u>, 283 F.3d 1019, 1040 (9th Cir.

2002), vacated on other grounds, <u>Mayle v. Brown</u>, 538 U.S. 901 (2003).

To the extent Petitioner might attempt to base a due process claim on having a liberty interest that was violated by the state court's abuse of discretion, the source of any liberty interest is state law.  Cf. <u>Swarthout v. Cooke</u>, 562 U.S. -, 131 S.Ct. 859, 861-62 (2011) (characterizing as reasonable a decision of the Ninth Circuit Court of Appeals that California law creates a liberty interest in parole protected by the Due Process Clause of the Fourteenth Amendment).  Here, after affording Petitioner due process and considering the pertinent factors, the state court determined there was no abuse of discretion under state law.  <u>People v. Valencia</u>, 2011 WL 726670, at *4-*5.  Thus, Petitioner has not shown there was a violation of a liberty interest protected by the Due Process Clause.  Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.  <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir. 1994).  Petitioner has not shown any fundamental unfairness.

VI.  <u>Excessive Sentence</u>

Petitioner alleges that the sentence of twenty-five years to life for corporeal injury to a spouse is grossly excessive and fundamentally unfair because the injury was not statutorily categorized as violent or serious, the conduct was part of an effort to prevent the spouse from driving while intoxicated, and Petitioner's prior convictions were thirteen and fourteen years old. (SAP, doc. 29, 5; SAP, doc. 47, 1-2.)

A.  <u>The State Court's Decision</u>

The CCA's decision on Petitioner' sentencing claims was left

undisturbed by the CSC's summary denial of review. (LD 7.) The CCA summarized the pertinent facts as follows:

> The probation office prepared a report that had a recommendation for a three strikes sentence; the report, however, also included an alternative sentencing recommendation in case the trial court exercised its discretion to strike the strike convictions. The defense asked that one or both strike convictions be stricken by the trial court; the People opposed the request.
>
> The record established that Valencia had suffered five felony convictions: (1) a 1995 conviction for kidnapping, (2) a 1996 conviction for criminal threats, (3) a 1996 conviction for resisting an executive officer, (4) a 1996 conviction for driving under the influence, and (5) a 2000 conviction for corporal injury to a spouse or cohabitant. In addition to the felony convictions, Valencia had 11 misdemeanor convictions. Valencia had served three prison terms and was on probation at the time of the altercation with Kobel. Valencia had a history of drug and alcohol abuse and had participated in a 52-week counseling session to address domestic violence.
>
> The trial court noted that Valencia had been in an alcohol program, a 52-week domestic violence program, had nine grants of probation, and was on probation at the time of the altercation with Kobel. The trial court noted the lengthy history of criminal offenses committed by Valencia and the similarity of the attack on Kobel to the earlier domestic violence conviction and attack on Long. The trial court stated that Valencia was "a violent man. And I don't dare leave him out." The trial court described Valencia as "a poster child for three strikes." The trial court thereafter imposed a term of 25 years to life.

People v. Valencia, 2011 WL 726670, at *4.

The CCA next addressed the claim of an abuse of discretion, concluding that the trial court had based its discretionary sentencing decision on appropriate factors and individualized considerations specific to Petitioner. Id. at *5. The CCA then set forth the following analysis:

22

We also reject Valencia's contention that a three strikes sentence of 25 years to life is disproportionate to the offense and a violation of his constitutional rights. The purpose of the three strikes law is not to subject a criminal defendant to a life sentence merely on the basis of the latest offense. Rather, the purpose is to punish recidivist behavior. (*People v. Diaz* (1996) 41 Cal.App.4th 1424, 1431; *People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1630-1631.) Habitual offender statutes have withstood constitutional scrutiny based on assertions of cruel and unusual punishment, as well as claims of a disproportionate sentence. (See *People v. Ayon* (1996) 46 Cal.App.4th 385, 398-400, disapproved on other grounds in *People v. Deloza* (1998) 18 Cal.4th 585, 593-595, 600, fn. 10.)

The sentence imposed by the trial court was not an abuse of discretion and did not violate Valencia's constitutional rights.

People v. Valencia, 2011 WL 726670, at *5.

       B.  Analysis

Insofar as Petitioner challenges the application of state statutory law that for sentencing purposes may have either categorized his offense as serious or violent or set forth criteria for evaluating a history of prior convictions, this Court will not review the state court's decision.

Regarding Petitioner's challenge to his sentence as unconstitutionally excessive or disproportionate, the availability of habeas relief is limited in a proceeding pursuant to 28 U.S.C. § 2254.  Habeas relief is limited regardless of whether Petitioner's claim is based on the sentencing court's denial of the motion to strike the prior conviction, its characterization of the offense as serious or violent, or its evaluation of the Petitioner's history of prior convictions.  It is only a criminal sentence that is "grossly

23

disproportionate" to the crime for which a defendant is convicted that may violate the Eighth Amendment.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 72 (2003) (<u>Andrade</u>); <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); <u>Rummel v. Estelle</u>, 445 U.S. 263, 271 (1980) (<u>Rummel</u>).  Outside of the capital punishment context, the Eighth Amendment prohibits only sentences that are extreme and grossly disproportionate to the crime.  <u>United States v. Bland</u>, 961 F.2d 123, 129 (9th Cir. 1992) (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001, (1991) (Kennedy, J., concurring)).  Such instances are "exceedingly rare" and occur in only "extreme" cases.  <u>Andrade</u>, 538 U.S. at 72-73; <u>Rummel</u>, 445 U.S. at 272.  So long as a sentence does not exceed statutory maximums, it will not be considered cruel and unusual punishment under the Eighth Amendment.  <u>See United States v. Mejia Mesa</u>, 153 F.3d 925, 930 (9th Cir. 1998); <u>United States v. McDougherty</u>, 920 F.2d 569, 576 (9th Cir. 1990).

Here, Petitioner's sentence was not disproportionate and did not offend the Eighth and Fourteenth Amendments.  This conclusion rests on the limited range of disproportionate sentences recognized as Eighth Amendment violations under Supreme Court authority.  The decisions of the Supreme Court confirm that the Eighth Amendment does not disturb the authority of a state to protect the public by adopting a sentencing scheme that imposes longer sentences on recidivists who have suffered a serious prior felony conviction.  <u>Ewing v. California</u>, 538 U.S. 11, 25 (2003) (upholding a sentence of twenty-five years to life for a recidivist convicted of grand theft); <u>Andrade</u>, 538 U.S. at 66-67, 73-76 (upholding two consecutive

terms of twenty-five years to life and denying habeas relief to an offender convicted of theft of videotapes worth approximately $150 with prior offenses that included first-degree burglary, transportation of marijuana, and escape from prison); Rummel, 445 U.S. at 284 85 (upholding a sentence of life with the possibility of parole for a recidivist convicted of fraudulently using a credit card for $80, passing a forged check for $28.36, and obtaining $120.75 under false pretenses); Taylor v. Lewis, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (upholding a sentence of twenty-five years to life for possession of .036 grams of cocaine base where the petitioner had served multiple prior prison terms with prior convictions of offenses that involved violence and crimes against the person).

Here, Petitioner's prior offenses were numerous and involved arguably even greater social harm than the harm wrought by the acquisitive offenses in Ewing, Andrade, and Rummel.  The state court properly concluded that Petitioner's sentence was not disproportionate and did not offend the Eighth and Fourteenth Amendments considering the nature and circumstances of Petitioner's commitment offense as well as Petitioner's extended history of repeatedly committing serious and violent offenses without any significant rehabilitative progress.

Accordingly, it will be recommended that Petitioner's claim of cruel and unusual punishment in violation of the Eighth and

Fourteenth Amendments be denied.

VII. Due Process Right to an Impartial Tribunal

Petitioner alleges that his right under the Fourteenth Amendment to an impartial tribunal was violated because the trial court failed to recuse itself after it had signed a document indicating a belief in Petitioner's guilt. (SAP, doc. 29, 7.)

A. Procedural Default

Respondent contends that this Court should not review Petitioner's bias claim because of Petitioner's procedural default in the state court.[2] Petitioner raised his claim of a biased trial court in a habeas corpus petition filed in the TCSC, arguing the trial court had violated his due process rights by failing to grant recusal where the judge had "touched" the case before presiding over the case at trial. In denying the state habeas petition, the TCSC cited In re Dixon, 41 Cal.2d 756 (1953) and ruled that it would not consider the claim because Petitioner had failed to raise the issue on direct appeal. (Ans., exh. B, doc. 45 at 22-23.) However, Respondent addresses the underlying due process issue of a biased tribunal in the context of Petitioner's related IAC claims premised

---

[2] The doctrine of procedural default is a specific application of the more general doctrine of independent state grounds. It provides that when state court decision on a claim rests on a prisoner's violation of either a state procedural rule that bars adjudication of the case on the merits or a state substantive rule that is dispositive of the case, and the state law ground is independent of the federal question and adequate to support the judgment such that direct review in the United States Supreme Court would be barred, then the prisoner may not raise the claim in federal habeas absent a showing of cause and prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice. Walker v. Martin, - U.S. -, 131 S.Ct. 1120, 1127 (2011); Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003); Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994). The doctrine applies regardless of whether the default occurred at trial, on appeal, or on state collateral review. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

on trial and appellate counsel's failure to raise the due process challenge. (Id. at 14-15.)

A procedural default is not jurisdictional. Trest v. Cain, 522 U.S. 87, 89 (1997). It proceeds from concerns of comity and federalism because a prisoner's failure to comply with a state's procedural requirement for presenting a federal claim has deprived the state courts of an opportunity to address the claim in the first instance. Coleman v. Thompson, 501 U.S. at 831-32. In a habeas case, it is not necessary that the issue of procedural bar be resolved if another issue is capable of being resolved against the petitioner. Lambrix v. Singletary, 520 U.S. 518, 525 (1997). Likewise, the procedural default issue, which may necessitate determinations concerning cause and miscarriage of justice, may be more complex than the underlying issues in the case. In such circumstances, it may make more sense to proceed to the merits. See Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002). The Court will proceed to consider the merits of Petitioner's claim in the interest of economy.

A fair trial in a fair tribunal is a basic requirement of due process. In re Murchison, 349 U.S. 133, 136 (1955); see Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991). Fairness requires an absence of actual bias and of the probability of unfairness. In re Murchison, 349 U.S. at 136. Bias may be actual, or it may consist of the appearance of partiality in the absence of actual bias. Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995). A showing that the adjudicator has prejudged, or reasonably appears to have prejudged, an issue, is sufficient. Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir. 1992).

However, there is a presumption of honesty and integrity on the part of decision makers.  <u>Withrow v. Larkin</u>, 421 U.S. 35, 46-47 (1975).  Opinions formed by a judge based on facts introduced or events occurring in the course of the current proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994).

Here, in the state court, Petitioner alleged that the judge who presided over trial had demonstrated bias or belief in Petitioner's guilt by pretrial rulings, including denying release on Petitioner's own recognizance during video arraignment, granting a restraining order against Petitioner's contact with the victim, declining to permit Petitioner's wife to testify at the preliminary hearing, finding probable cause and holding Petitioner to answer on the charges, granting the prosecutor's <u>in limine</u> motions to admit evidence of prior domestic violence, granting a body attachment to bring Petitioner's wife to court to testify as a witness, holding an unspecified <u>ex parte</u> hearing, and failing to instruct the jury on the defense of necessity.  The CSC left undisturbed the lower court's decision declining to consider Petitioner's claim of judicial bias because of failure to raise the issue in the trial court and on appeal.  (LD 16.)

Here, the rulings that were the basis of Petitioner's challenge were not decisions on the merits of Petitioner's guilt; they were decisions made either on matters collateral to Petitioner's guilt or pursuant to standards other than beyond a reasonable doubt, such as probable cause.  These routine pretrial rulings provide no basis for

concluding that any bias or prejudice entered into the judge's rulings or had any effect on them.  The mere participation of a judge in a case as an adjudicator in a proceeding does not disqualify the jurist from participating as the trial judge.  A review of the record reflects no basis for a finding that the trial judge here had exceeded a neutral judicial role in ruling on matters presented by the parties.  Compare In re Murchison, 349 U.S. at 137-39 (due process was violated where the judge who conducted a one-person grand jury investigation and brought charges also served as the trier of fact on same charge); Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 321-27 (1979) (search warrant invalid if issuing magistrate abandoned the neutral judicial role to aid police in executing a warrant and thereby became part of what was essentially a police operation).

In sum, Petitioner has not shown that the trial court abandoned its neutral judicial role, prejudged the case, or reasonably appeared to have prejudged the case.  Petitioner has not rebutted the presumption of regularity.  Whether the claim is judged under the deferential standard of § 2254(d) or under the more demanding standard of de novo review, Petitioner has not shown a violation of his right to a fair and impartial tribunal.  Cf. Knowles v. Mirzayance, 556 U.S. 111, 123-24 (2009).

Accordingly, it will be recommended that Petitioner's due process claim concerning a biased trial judge be denied.

VIII.   Ineffective Assistance of Counsel for Failure to Move to Recuse the Trial Court Judge

Petitioner alleges he was denied his right to the effective assistance of counsel by trial counsel's failure to move to recuse

the trial court after it had signed an document evincing a belief in the Petitioner's guilt.  (SAP, doc. 29, 7.)

As set forth aboce, where a request for relief is not meritorious or is otherwise futile, it is not unreasonable for counsel to fail to request the relief, and such an omission is not prejudicial.  Counsel's failure to move to recuse the trial judge was not objectively unreasonable because any motion to recuse the judge would not have been successful.  In any event, Petitioner has not shown that it was prejudicial.

The same analysis applies to Petitioner's allegation that he was denied his right to the effective assistance of counsel when appellate counsel failed to raise both judicial bias and the ineffective assistance of trial counsel for having failed to raise the issue of judicial bias.  (SAP, doc. 29, 8.)

Accordingly, it will be recommended that the Court deny Petitioner's IAC claims concerning the failure to raise the bias of the trial court.

IX.  Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.

§ 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

X.  Recommendations

Based on the foregoing, it is RECOMMENDED that:

1) The second amended petition for writ of habeas corpus be DENIED;

2) Judgment be ENTERED in favor of Respondent; and

3) The Court DECLINE to issue a certificate of appealability.

31

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 27, 2015**                      **/s/ Sheila K. Oberto**
                                       UNITED STATES MAGISTRATE JUDGE